# United States District Court
## for the Northern District of Oklahoma

Case No. 26-cv-103-JDR-MTS

MIGUEL DEONTAE ANTONIO PARKER,

*Plaintiff*,

*versus*

TULSA COUNTY, OKLAHOMA; DAVID PARKER, *individually and in his official capacity*; SHAYLONDA POWELL, *individually and in her official capacity*; DOUGLASS CURRINGTON, *individually and in his official capacity*; TULSA COUNTY COMMISSIONERS, *in their official capacities*;

*Defendants*.

## OPINION AND ORDER

In his second amended complaint, Plaintiff Miguel Deontae Antonio Parker alleges that Defendants David Parker, Shaylonda Powell, Douglass Currington, Tulsa County Commissioners, and Tulsa County, Oklahoma, violated Mr. Parker's Fourteenth-Amendment rights when they falsely characterized him as a felon. Dkt. 15. Defendants moved to dismiss that pleading for failure to state a viable claim for relief. Dkt. 27. Mr. Parker moved to amend [Dkt. 31], and Defendants objected, arguing that the proposed third amended complaint fails for the same reasons as the currently operative pleading. Dkt. 36. After reviewing all pending motions, the corresponding briefs, and the operative and proposed pleadings, the Court agrees that Mr. Parker cannot state a claim for relief based on the facts he alleges. Accordingly, the Court denies his motion for leave to file a third amended complaint [Dkt. 31] and grants Defendants' motion to dismiss [Dkt. 27].

## I[1]

Tulsa County hired Miguel Deontae Antonio Parker to work as a Juvenile Detention Officer on May 14, 2024. Dkt. 33-1 at ¶¶ 9-10, 13.[2] At the time he was hired, Mr. Parker had been charged in Muskogee County with Endeavoring to Perform an Act of Violence, a felony offense. *Id.* Mr. Parker informed his supervisors, Curtice Williams and Douglas Currington, of the pending charges. *Id.* at ¶ 10. Although Mr. Parker was permitted to begin work notwithstanding the charges, he was advised to keep his supervisors informed of the case. *Id.* at ¶¶ 11-12. Mr. Parker complied with that instruction. *Id.*

On July 19, 2024, Mr. Parker appeared in Muskogee County District Court for a *Faretta* hearing. Dkt. 31-1 at 11 (Plf's Ex. 1).[3] At that hearing, the charge against Mr. Parker was reduced to a misdemeanor in exchange for Mr. Parker's voluntary guilty plea. Dkt. 33-1 at ¶¶ 14-15; Dkt. 31-1 at 11. The court entered a six-month deferred sentence on the misdemeanor offense. Dkt. 33-1 at ¶¶ 14-15; Dkt. 31-1 at 11.

Mr. Parker was never convicted of a felony while employed by Tulsa County. He kept his employer informed of the status of his criminal case and he continued to work for the County without incident for about two months after entering his guilty plea. Dkt. 33-1 at ¶¶ 12, 16-17, 21. There is no allegation that Mr. Parker violated County policies requiring employees to disclose pending criminal charges to the County, nor is there any allegation that he

---

[1] The facts in this section are drawn from the uniform allegations in Mr. Parker's second, third, and proposed substitute third amended complaints. Dkts. 15, 31-1, 33-1. The Court adopts the well-pleaded allegations in those pleadings as true and construes them in the light most favorable to Mr. Parker. *E.g.*, *Porter v. Ford Motor Co.*, 917 F.3d 1246, 1248 (10th Cir. 2019).

[2] Because Mr. Parker and Defendant David Parker share the same last name, the Court refers to Plaintiff as "Mr. Parker" and Defendant David Parker as "Defendant Parker."

[3] All citations use CM/ECF pagination.

was subject to any personnel policies permitting disciplinary action against employees who are convicted of felonious acts. *Id.* at ¶¶ 18-20.

At or around the time that Mr. Parker entered his guilty plea, the County hired Defendant David Parker to serve as the Facility Manager for the Tulsa County Family Center for Juvenile Justice. *Id.* at ¶ 24. Defendant Parker was hired during a period of public scrutiny, and he expressed his intention to ensure accountability and address misconduct at the juvenile justice facility during his tenure. *Id.* at ¶¶ 25-27.

On September 11, 2024, Mr. Parker was escorted to a meeting with Defendant Parker, Mr. Currington, and Ms. Powell. *Id.* at ¶¶ 33-34. At the meeting, the three Defendants discussed Mr. Parker's criminal charges and concluded that the situation was "not a good look" for the County. *Id.* at ¶ 36. In response, Mr. Parker stated that he had not been convicted of a felony, that his charge had been reduced to a misdemeanor, and that the case "no longer involved any felony charge." *Id.* at ¶¶ 37-38. Defendant Parker responded that he would consult with County attorneys about Mr. Parker's continued employment. *Id.* at ¶ 39.

Soon afterward, Defendant Parker directed Ms. Powell to prepare documents suspending Mr. Parker's employment. *Id.* at ¶ 41; *id.* at 13, 19 (screenshots indicating Mr. Parker was terminated from his employment in or before November 2024). That documentation "utiliz[ed] felony-related language" that "falsely or misleadingly characterized Plaintiff's criminal matter as involving a felony." *Id.* at ¶¶ 42-44. Defendants also "continued to characterize Plaintiff's criminal matter using felony-related terminology" and "felony-related characterizations" despite knowing that Mr. Parker "no longer faced felony charges." *Id.* at ¶¶ 40-47. Mr. Parker was suspended and later terminated from his employment because of the pending criminal proceedings. *Id.* at ¶ 47.

After Mr. Parker was fired, the County advised the Oklahoma Employment Security Commission that Mr. Parker had been "in court for charges for a criminal felony." *Id.* at ¶ 50; Dkt. 33-1 at 19 (photograph of communication indicating that Mr. Parker "had charges for criminal felony"). Mr. Parker alleges that, at the time the County made these statements, his "felony charge had . . . been reduced to a misdemeanor for approximately four months." *Id.* at ¶ 51. Mr. Parker argues that Defendants failed to disclose that his felony charge had been reduced to a misdemeanor and failed to clarify that Mr. Parker had never been convicted of a felony. *Id.* at ¶¶ 52-53. He claims he was never given a meaningful opportunity to clear his name after Defendants communicated incomplete and stigmatizing information about his criminal charges. *Id.* at ¶¶ 59-60.

Mr. Parker alleges that Defendants violated his Fourteenth-Amendment rights when they "communicated felony-related information" after his charge had been reduced to a misdemeanor, and that, as a result of their actions and their failure to provide him with a meaningful name-clearing opportunity, Mr. Parker suffered damage to his reputation, loss of benefits, lost employment opportunities, and other damages. *Id.* at ¶¶ 54-58, 78-87.

Defendants respond that both Mr. Parker's second amended complaint and his proposed third amended complaint fail to set forth facts that would establish a Fourteenth-Amendment violation, fail to connect the individual Defendants to the alleged misconduct, fail to identify any policy or procedure that would justify holding the County liable for the alleged constitutional violation, and fail to set forth any individual claims that would not be barred under the doctrine of qualified immunity. *See generally* Dkt. 36. Because the Court agrees that Mr. Parker has failed to set forth facts that, if true, would establish a violation of his Fourteenth-Amendment rights, the Court denies his motion to amend and dismisses his second amended complaint.

## II

"The Fourteenth Amendment protects citizens from being deprived of 'liberty' as well as 'property' without 'due process.'" *Martin Marietta Matrials, Inc. v. Kan. Dep't of Transp.*, 810 F.3d 1161, 1184 (10th Cir. 2016) (citing *Gwinn v. Awmiller*, 354 F.3d 1211, 1216 (10th Cir. 2004)). When a government acts in a way that impairs an individual's name, reputation, honor, or integrity, that action may, under certain circumstances, implicate a protectable liberty interest. *Id.* (recognizing that a protectible liberty interest may be implicated when the government harms an individual's good name, but that "[d]amage to reputation alone . . . is not sufficient"); *Workman v. Jordan*, 32 F.3d 475, 480 (10th Cir. 1994) (recognizing a liberty interest in the plaintiff's "good name and reputation as it affects his protected property interest in continued employment").

To demonstrate that Defendants infringed Mr. Parker's protected liberty interest in his good name or reputation, Mr. Parker must allege facts that, if true, would establish the following: First, that the statements made by the County "impugn the good name, reputation, honor, or integrity of" Mr. Parker; second, that the statements were false; third, that the statements were made in the course of terminating Mr. Parker's employment or foreclosed other employment opportunities;[4] and fourth, that the statements were published. *Workman*, 32 F.3d at 481 (citations and quotation marks omitted).

Mr. Parker's claims fail on the second required element. Mr. Parker challenges Defendants' decision to inform the Oklahoma Employment Security Commission that Mr. Parker "had charges for" and was "in court for charges for" a criminal felony. Dkt. 33-1 at ¶¶ 50, 56. But these statements were, by Mr. Parker's own account, true. Mr. Parker acknowledges that he

---

[4] Later opinions clarify that the third element should be stated in the conjunctive, not the disjunctive. *See Renaud v. Wyoming Dep't of Fam. Servs.*, 203 F.3d 723, 728 n.1 (10th Cir. 2000). The distinction is not material to this opinion.

was charged with a felony in Muskogee County. *See* Dkt. 15 at 2 (alleging Mr. Parker entered into a plea on a misdemeanor that was "originally filed as a felony"); Dkt. 33-1 at ¶¶ 13-14 (alleging that Mr. Parker was charged with a "felony offense" in 2023 and that the "felony charge was formally reduced" to a misdemeanor in July 2024). Because Mr. Parker's own allegations establish that, as the County said, Mr. Parker "had" and was "in court for" charges related to a felony, his Fourth Amendment claim must fail. *See Asbill v. Hous. Auth. of Choctaw Nation of Okla.*, 726 F.2d 1499, 1503 (10th Cir. 1984) (holding that the plaintiff's claims fell short of the necessary requirements because the plaintiff "admitted that [the] statements as to why she was discharged were true"); *see also Martin Marietta*, 810 F.3d at 1185 (affirming denial of relief where the plaintiff conceded that the statements made by the government were not false); *Zesiger v. Leavenworth County*, No. 2:25-cv-02324-JAR-RES, 2025 WL 2926551, at *4 (D. Kan. Oct. 15, 2025) (concluding the plaintiff failed to state a claim for relief where the plaintiffs admitted that they took the action reported by the defendant).

Mr. Parker argues that, even if Defendants' statements were technically accurate, they nevertheless created a false impression that Mr. Parker was still facing felony charges in the fall of 2024 when, in fact, he had pleaded guilty to a misdemeanor earlier that year. This argument is without merit. The bulk of the case law reviewed by the Court suggests that a statement must be demonstrably false, and not merely misleading, to establish a deprivation-of-liberty claim *See Martin Marietta*, 810 F. 3d at 1185; *Workman*, 32 F.3d at 481; *Asbill*, 726 F.2d at 1503; *I.G. v. Bd. of Educ. of Aztec Mun. Sch. Dist.*, Civ. No. 18-124 KK/KBM, 2018 WL 4700233, at *10 (D.N.M. Sept. 30, 2018) (dismissing claim where the plaintiffs had "not explicitly alleged that [the defendants] made a verifiably false statement"). Although the Court did identify one exception to that general rule, the facts of that case are distinguishable. In *McDonald v. Wise*, the defendant stated that the plaintiff had been fired "*for* serious misconduct" when, in reality, he had been terminated because of

*allegations* of misconduct. 769 F.3d 1202, 1209-12 (10th Cir. 2014). The Court of Appeals concluded that, even if the defendant had "only stated that [the plaintiff] was fired because of allegations of serious misconduct,"[5] that statement, together with his termination, could "give[] the false impression that [the plaintiff] did in fact commit serious misconduct" even though no misconduct had occurred. *Id.* at 1212. The plaintiff in *McDonald* was falsely painted as engaging in wrongful conduct that he had not, in fact, engaged in; Plaintiff in this case, by contrast, was portrayed as someone who had been in court for felony charges when he had, in fact, been in court on felony charges. The County's statements, without more, did not create the type of false impression that was created by the statements discussed in *McDonald*.

Furthermore, Mr. Parker's contention that he no longer faced felony charges after pleading guilty on July 19, 2024, is based on an incomplete and inaccurate recitation of the state-court criminal proceedings. Approximately ten days after entering his guilty plea (and well before the County fired him and reported its reasons for doing so), Mr. Parker moved to withdraw his plea. Dkt. 33-1 at 11 (screenshot of docket report for July 29, 2024). His motion remained pending until March 2025, when Mr. Parker advised the court that he "no longer wishe[d] to pursue withdrawal of the nolo contendre [sic] plea" and wished to "allow the case to proceed on the deferred sentence." *See State v. Parker*, No. CF-2023-00716, Mot. to Withdraw, *available at* https://www.oscn.net/dockets/GetCaseInformation.aspx?db=muskogee-&number=CF-2023-00716&cmid=11227301.[6] As a result, the felony charges

---

[5] The Court notes that the plaintiff in *McDonald* specifically alleged that the defendant "confirmed at press conferences that he was in fact fired *for* serious misconduct." *McDonald v. Wise*, 769 F.3d 1202, 1212 (10th Cir. 2014) (internal quotation marks omitted). The Tenth Circuit's statement about what it would have found even if a different statement had been made, while persuasive, is dicta.

[6] When resolving a motion to dismiss, a court may "take judicial notice of another court's publicly filed records if they have a direct relation to matters at issue," so long as (*footnote continues*)

were far from resolved when Defendants informed the Oklahoma Employment Security Commission that Mr. Parker "had charges for" and was "in court for charges for" a criminal felony in the fall of 2024. When Defendants made those statements, the statements were accurate. Dkt. 33-1 at ¶¶ 50, 56. Defendants' true statements cannot, as a matter of law, give rise to a deprivation-of-liberty claim. *Workman*, 32 F.3d at 481.

## III

The Court concludes that neither Mr. Parker's second amended complaint nor his proposed third amended complaint adequately allege that any Defendant made a demonstrably false statement. This dooms Mr. Parker's direct and indirect claims as a matter of law. *See id.*; *see also Burke v. Regalado*, 935 F.3d 960, 996-98 (10th Cir. 2019) (recognizing that both supervisory liability and *Monell* liability require an underlying deprivation of a constitutional right). The Court therefore denies Mr. Parker's motion to amend his pleading because the amended pleading does not state a viable claim for relief. *See Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999) (recognizing that a court may deny leave to amend where the complaint, as amended, would be subject to dismissal). For the same reasons, the Court grants Defendants' motion to dismiss.

DATED this 20th day of October 2026.

JOHN D. RUSSELL
*United States District Judge*

---

the records are considered only for purposes of establishing their contents, and not to prove the truth of their contents. *Bruce v. City & Cnty. of Denver*, 57 F.4th 738, 741 n.2 (10th Cir. 2023). The Court considers Mr. Parker's motion to withdraw only to show the status of his case at the time the defamatory statements were made.